UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
Binghamton Division

| | |
|---|---|
| AMANDA DAVID, and<br>ROOTWORK HERBALS, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT WHITTAKER, JR.<br><br>Defendant. | Civil Action No.: 3:24-cv-00699-DNH-ML<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## Nature of the Action

1.      Plaintiffs Amanda David and Rootwork Herbals, LLC (collectively, "Plaintiffs") bring this action for declaratory, injunctive, and monetary relief against Defendant Robert Whittaker, Jr., Ms. David's next-door neighbor, in order to end his years-long campaign of discriminatory harassment based on race, color, and/or sex in violation of the federal Fair Housing Act ("FHA" or "Act"), 42 U.S.C. § 3601 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, and the New York State Human Rights Law ("Human Rights Law" or "NYHRL"), N.Y. Exec. Law § 290 *et seq*. Ms. David also seeks relief for Defendant Whittaker's discriminatory and intentional infliction of emotional distress.

## Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this matter under 42 U.S.C. § 3613, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3). This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are related to Plaintiffs'

1

federal law claims and arise out of a common nucleus of facts. Plaintiffs' state law claims are related to Plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has authority to grant the requested declaratory and injunctive relief against Defendant under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b) because Defendant Whittaker resides in this district, the property that is the subject of this action is located in this district, and all relevant events giving rise to the claims in this action occurred in this district.

## PARTIES

5. Plaintiff Amanda David is a 48-year-old African American woman and identifies as queer. She lives with her three children – a 23-year-old son, an 18-year-old son, and an 11-year-old daughter – in Caroline, New York.

6. Plaintiff Rootwork Herbals, LLC is a New York limited liability company and its principal operations and activities are conducted at Ms. David's property in Caroline, New York.

7. Defendant Robert Whittaker, Jr. resides at and owns the property located directly next door to the Davids' home in Caroline, New York. He is White and, upon information and belief, is approximately 60 years of age.

## STATEMENT OF FACTS

8. Ms. David and her three children moved into their home in the Town of Caroline, New York in or around July 2020.

9. Ms. David is a gardener, community herbalist, and the creator, manager, and 100% owner of Rootwork Herbals. Rootwork Herbals is dedicated to providing herbal medicine education and access to Black, Indigenous, and other people of color ("BIPOC individuals"), as well as queer and/or transgender ("trans") individuals. Among various projects comprising this work, Plaintiffs host a community garden on Ms. David's property that is intended to provide a sanctuary for BIPOC, queer, and/or trans individuals to build community connections while growing both food and medicinal plants. Plaintiffs also provide in-person educational courses and certificate programs on plant medicine at Ms. David's property.

10. The Town of Caroline is in Tompkins County and is located approximately twelve miles southeast of the City of Ithaca.

11. As of the 2020 Census, Caroline had a population of just over 3,300 people.[1]

12. The residents of Caroline are overwhelmingly White, with White residents comprising more than 85% of the population as of the 2020 Census. Only 2.2% of Caroline residents were Black or African American as of the 2020 Census.

13. The Davids' home is located on a sparsely populated, rural road.

14. Upon information and belief, the Davids are the only African American residents along their one-and-a-half-mile-long road.

15. Defendant Whittaker's property is located immediately adjacent to the Davids' home and his garage is situated within a few feet of the property line.

16. The Davids rented their home during their first year at the property.

---

[1] *See* United States Cenus Bureau, Caroline town, Tompkins County, New York Profile, available at: https://data.census.gov/profile/Caroline_town,_Tompkins_County,_New_York?g=060XX00US3610912606.

17. On several occasions during that first year, Defendant Whittaker made racially derogatory statements to Ms. David about the then-owner of the property, who was Asian American. Defendant Whittaker referred to the owner as a "Chink" on multiple occasions.

18. In July 2021, approximately a year after the Davids moved into their home, Ms. David purchased the property.

19. Shortly after Ms. David purchased the home, Defendant Whittaker began making racially and/or sexually derogatory remarks to Ms. David on a regular basis any time they encountered one another outside. For example, Defendant Whittaker repeatedly made statements expressing skepticism that Ms. David could afford her home and speculated that she could only afford her home because the father of Ms. David's children must have been rich.

20. Due in significant part to Defendant Whittaker's derogatory statements, Ms. David hired a fence company to install a privacy fence around her property in or around September 2021.

21. Defendant Whittaker interfered with the fence installation on more than one occasion by removing survey stakes and string placed along Ms. David's property marking where the fence was to be installed.

22. In or around October 2021, Defendant Whittaker also yelled at the fence installers on several occasions and made racist and sexist statements about Ms. David and her children when doing so. Among his racist and sexist remarks, Defendant Whittaker called the Davids "niggers" and referred to Ms. David as a "nigger cunt bitch." The fence installers informed Ms. David of Defendant Whittaker's racist and sexist statements during discussions with her about their progress on the fence installation.

23. In or around November 2021, Defendant Whittaker installed a stepladder against Ms. David's newly installed fence. On multiple occasions, he used the stepladder to leer at Ms. David

and her children in a menacing manner while they were in their yard and to shout racist and sexist insults at them over the fence. Defendant Whittaker again called the Davids "niggers" and Ms. David a "nigger cunt bitch." Defendant Whittaker also threatened to get a sound cannon that he would blare at the Davids to force them to move out.

24. In or around December 2021, Defendant Whittaker removed several "no trespassing" signs that Ms. David had installed on her fence after Defendant Whittaker entered her property and attached structures to the fence.

25. In or around June 2022, Defendant Whittaker yelled multiple profanities and racist slurs at Ms. David while she was outside her home, including calling her a "nigger."

26. In early October 2022, Defendant Whittaker yelled racist epithets at Ms. David and her daughter while they were completing chores outside, including calling them "fucking niggers."

27. On October 28, 2022, Defendant Whittaker shouted racist slurs and other profanities at both her oldest son and her daughter while they were outside in the Davids' yard, including calling them "niggers." Defendant Whittaker also threatened to beat her son up with a stick or a bat.

28. When Ms. David heard shouting, she went outside to intervene. Defendant Whittaker then yelled racist slurs and stereotypes at her, calling her and her children "fucking niggers," "fucking handouts," and "fucking nigger motherfuckers." During his racist rant, Defendant Whittaker also shouted, "I worked for forty fucking years supporting fucking niggers like you, and I retire, and I get fucking niggers like you moving in next door to me." Ms. David's children recorded Mr. Whittaker's racist tirade.

29. Ms. David reported the incident to the Tompkins County Sherriff's Office the same day.

30. On October 30, 2022, the Sherriff's Office charged Defendant Whittaker with criminal harassment in the second degree, in violation of New York Penal Law § 240.26.

31. In or around November 2022, Ms. David hosted a group of approximately 15 Black teens at her property as part of her work with the Youth Farm Project, a non-profit organization committed to engaging youth from diverse social and economic backgrounds in building equitable local food communities. Defendant Whittaker began shooting a gun in his yard shortly after the group of teens arrived, frightening both Ms. David and the children.

32. Upon information and belief, in or around June 2023, Defendant Whittaker removed a section of metal wire fencing that separated Ms. David's property from his.

33. Ms. David reported the fence removal to the New York State police.

34. Later that day, Defendant Whittaker drove a utility task vehicle (UTV) back and forth in front of the Davids' home while Ms. David stood on her porch. Each time Defendant Whittaker passed, he raised his middle finger and shouted racial slurs and sexist profanities at Ms. David, including calling her a "cunt" and a "nigger."

35. With the help of friends and other volunteers, Ms. David replaced the section of fence removed by Defendant Whittaker. She and the group also installed a new gate in the fence to allow her and her children to access the back section of their property without needing to walk along the property line abutting Defendant Whittaker's property.

36. Upon information and belief, Defendant Whittaker tampered with the Davids' fence again on or about August 20, 2023.

37. On August 22, 2023, Ms. David reported the fence tampering to the Tompkins County Sherriff's Office. Two Sherriff's Deputies responded to Ms. David's complaint and interviewed Defendant Whittaker at his property. During questioning by the Sherriff's Deputies, Defendant

Whittaker made racist statements regarding Ms. David and her children. Although Defendant Whittaker admitted to tampering with Ms. David's fence in the past, the Sherriff's Deputies left the property without issuing any charges against him.

38. Later that day, Defendant Whittaker stopped his UTV in front of the Davids' house while Ms. David was on her front porch and yelled racist and sexist profanities at her, including calling her a "dumb fucking cunt." After driving the UTV back to his house, Defendant Whittaker returned on foot and continued to yell profanities at Ms. David as she stood on her porch, including calling her a "stupid fucking cunt." Defendant Whittaker also shouted, referring to the David family, "worst fucking thing to happen to the fucking neighborhood." He then yelled, "used to be a nice quiet little spot, till you fucking handouts coming around." As he walked back toward his property, Defendant Whittaker shouted "fucking handouts" several more times and called Ms. David a "dumb fucking bitch." A friend of Ms. David recorded this harassment.

39. Ms. David immediately contacted the Tompkins County Sherriff's Department to report Defendant Whittaker's harassment.

40. In response to Ms. David's complaint, two Sherriff's Deputies again went to Defendant Whittaker's house to question him. As reflected in the Sheriff's Office report, Defendant Whittaker called Ms. David a "nigger" during questioning. He also stated to the Deputies that there were "three types of people in the world, whites, colored people and faggot ass niggers," and stated that Ms. David belonged to the third group.

41. The Sherriff's Deputies then arrested Defendant Whittaker and charged him for a second time with criminal harassment in the second degree, in violation of New York Penal Law § 240.26. Defendant Whittaker continued to make racist and homophobic statements both during

transport to the Sherriff's Office and during processing. Defendant Whittaker was released after being issued an appearance ticket for harassment.

42. On August 23, 2023, the day after his arrest, Defendant Whittaker placed a sign stating "NO KNOT-HEADS NEEDED" in a window of his garage that directly faces the Davids' home and is situated within feet of the property line. This sign remains up to the present.

43. On August 27, 2023, Defendant Whittaker placed an additional sign stating "NO KOOK NEEDED" in another garage window that also directly faces the Davids' home and is situated within feet of the property line. This sign also remains up to the present.

44. On September 2, 2023, Defendant Whittaker screamed profanities and racial slurs at Ms. David's oldest son while he was outside performing chores.

45. On September 15, 2023, Defendant Whittaker shouted "fucking handouts" repeatedly for nearly two hours while Ms. David's daughter was outside in the yard.

46. The next day, a group of Black children participating in a program with the Ithaca Southside Community Center visited the Davids' property. While Ms. David's daughter and the visiting children were outside painting a mural, Defendant Whittaker repeatedly shouted profanities and racial slurs.

47. On September 19, 2023, Defendant Whittaker screamed "fucking handouts" and other racially charged insults and profanities at Ms. David while she was outside working in her garden.

48. On October 5, 2023, Defendant Whittaker again screamed "fucking handouts" and other racist and sexist insults and profanities at Ms. David for over an hour while she worked in her garden.

49. The next day, Defendant Whittaker screamed racist and sexist insults and profanities for approximately half an hour while Ms. David was outside with her dogs.

50. Upon information and belief, on October 14, 2023, Defendant Whittaker spray-painted "Fuck You" across a section of the David's fence that faces the road. Ms. David reported the vandalism to the Tompkins County Sheriff's Office.

51. Shortly after the Davids' fence was vandalized, Ms. David installed security cameras intended to record activity in front of the Davids' home and along the property line abutting Defendant Whittaker's property.

52. On October 23, 2023, Justice Gary Reinbolt of the Caroline Town Court issued a temporary order of protection against Defendant Whittaker, directing him to stay away from and refrain from harassing, communicating with, or otherwise contacting the David family.

53. Upon information and belief, Defendant Whittaker spray-painted "Fuck You" across the driver's side of the Davids' car and also spray-painted the trunk sometime during the late evening of December 6, 2023 while the vehicle was parked in the Davids' driveway. Ms. David's daughter discovered the vandalism when she went outside to catch the school bus early in the morning on December 7, 2023. She immediately informed Ms. David, who reported the vandalism to the Tompkins County Sheriff's Office.

54. On or about December 11, 2023, Defendant Whittaker pleaded guilty to the second criminal harassment charge and the charge was conditionally discharged by the Caroline Town Court. Pursuant to the conditional discharge, the court ordered Defendant Whittaker to stay away from and refrain from any contact with the Davids for two years.

55. Upon information and belief, Defendant Whittaker vandalized the Davids' car again on or about the late evening of January 16, 2024. This time he both spray-painted the passenger side

9

of the vehicle and forced an unknown instrument through the front grill of the car, causing significant mechanical damage, including to the radiator.

56. Ms. David reported the vandalism to both the Tompkins County Sheriff's Office and the New York State Police.

57. On or about February 12, 2024, Defendant Whittaker installed a section of fence across the property line that runs between his garage and Ms. David's fence, thereby preventing the Davids from accessing a portion of their property that runs along the outside of their fence.

58. Ms. David again reported Defendant Whittaker's trespass onto and tampering with her property to the Tompkins County Sherriff's Office.

59. On or about February 16, 2024, Defendant Whittaker posted a sign on his garage that directly faced Ms. David's yard and could only be seen from her property which read, "I support the 2nd!"

60. On or about the early morning of February 17, 2024, Defendant Whittaker used a pellet gun to shoot out a security light that Ms. David had installed on the family's chicken coop.

61. Ms. David reported the incident to the Sherriff's Office and on February 20, 2024, Defendant Whittaker was arrested and charged with criminal mischief in the fourth degree, in violation of New York Penal Law § 145.00(1), and criminal contempt in the second degree for violating the Davids' temporary order of protection against him, in violation of New York Penal Law § 215.50(3).

62. Also on February 20, 2024, Judge Jules Ravo of the Caroline Town Court issued a new temporary order of protection against Defendant Whittaker, again requiring him to stay away from and refrain from harassing, intimidating, or otherwise attempting to communicate with the

Davids in any way. In addition, Judge Ravo ordered Defendant Whittaker to surrender any firearms and pellet guns that he owned.

63. On or around February 21, 2024, Defendant Whittaker placed another sign in a garage window that directly faces the Davids' home and is situated within feet of the property line. This sign states, "NO FREAK-FARM NEEDED," and remains up to the present.

64. On or about March 13, 2024, Defendant Whittaker placed yet another sign in a garage window that directly faces the Davids' home and is situated within feet of the property line. This sign states, "NO RAIN-BOWS NEEDED," and remains up to the present.

65. On June 17, 2024, Defendant Whittaker pleaded guilty to criminal contempt in the second degree, in violation of New York Penal Law § 215.50(3), for shooting out Ms. David's security light with a pellet gun and thereby violating the October 23, 2023 temporary order of protection. The certificate of disposition attendant to Defendant Whittaker's guilty plea further notes that the February 17, 2024 charge against him for criminal mischief in the fourth degree, based upon his shooting out of Ms. David's security light, was covered by his plea and conviction for criminal contempt.

66. As a condition of Defendant Whittaker's conviction for criminal contempt in the second degree, Judge Gary Reinbolt of the Caroline Town Court issued an order of protection once again requiring Defendant Whittaker to stay away from and refrain from harassing, intimidating, or otherwise attempting to communicate with the Davids in any way.

67. In direct violation of the June 17, 2024 order of protection issued by Judge Reinbolt, Defendant Whittaker has continued to racially harass Ms. David and her children.

68. Since the issuance of the most recent order of protection, Defendant Whittaker has repeatedly screamed at Ms. David and her children while they performed chores and other work in their yard.

69. On or about June 26, 2024, Defendant Whittaker screamed "handout fucks" over and over again at Ms. David and her daughter while they were in their yard. Defendant Whittaker's shouting went on for approximately thirty minutes. Ms. David reported the incident to the police.

70. In the late evening of July 6, 2024, Defendant Whittaker again screamed at Ms. David while she was outside on her property. The screaming lasted for approximately a half hour, during which Defendant Whittaker called Ms. David and her children "fucking handouts" around 25 times. The screaming was so loud that it could be heard by Ms. David's children inside the Davids' home. Ms. David once again reported the incident to the police. Upon information and belief, no further criminal prosecution of Defendant Whittaker has taken place to date.

71. Upon information and belief, many of Defendant Whittaker's instances of discriminatory harassment were motivated, at least in part, to intimidate and to retaliate against Ms. David for her attempts to enforce her fair housing rights by contacting the police and notifying them of Defendant Whittaker's unlawful conduct.

72. As a result of Defendant Whittaker's discriminatory harassment at all hours of the day and night, Ms. David and her children have been deprived of the full use and enjoyment of their property and experience fear, anxiety, and trepidation that they will be subjected to additional harassment nearly every time they step foot outside of their house.

73. Defendant Whittaker's discriminatory conduct has directly and significantly impaired Plaintiffs' ability to carry out Rootwork Herbals' mission to provide a safe and welcoming

environment for BIPOC, queer, and trans individuals to learn and practice herbal medicine and engage in community gardening at Ms. David's property.

74. Defendant Whittaker's discriminatory harassment has forced Plaintiffs to cancel in-person Rootwork Herbals courses and workshops at Ms. David's property, thereby denying Plaintiffs income-generating contractual opportunities.

75. Even when Plaintiffs have endeavored to host in-person courses despite Defendant Whittaker's discriminatory conduct, enrollment has declined because participants have cancelled their enrollment as a direct result of Defendant Whittaker's discriminatory harassment.

76. Defendant Whittaker's discriminatory harassment has also forced Plaintiffs to cancel community garden work parties and suspend offering individual garden beds to community members, which has made Plaintiffs ineligible for or otherwise impaired their ability to apply for grant funding opportunities.

77. Additionally, Defendant Whittaker's discrimination has interfered with Plaintiffs' efforts to hire an employee to assist with managing the community garden that Plaintiffs hosts on Ms. David's property.

## CAUSES OF ACTION

78. Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

**Count I: Violation of the Fair Housing Act of 1968, as amended 42 U.S.C. § 3601 *et seq.***

79. Defendant's conduct as described herein constitutes:

   a. The making of statements with respect to the sale of a dwelling that indicates a preference, limitation, or discrimination based on race, color, and/or sex in violation of 42 U.S.C. § 3604(c) and 24 C.F.R. § 100.50(b)(4)

    b. Coercing, intimidating, threatening, or interfering with persons in their enjoyment of a dwelling based on race, color, and/or sex, in violation of 42 U.S.C. § 3617 and 24 C.F.R. § 100.400.

80. As a result of Defendant's discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

### Count II: Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*

81. Defendant's conduct as described herein injured Plaintiffs by:

    a. Denying Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens, including the performance, modification, termination, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, in violation of 42 U.S.C. § 1981;

    b. Depriving Plaintiffs of the same right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981; and

    c. Denying Plaintiffs the same right as is enjoyed by white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property, in violation of 42 U.S.C § 1982.

### Count III: Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

82. Defendant's conduct as described herein constitutes retaliation or discrimination against any person because she has opposed practices forbidden under the New York State Human Rights Law or because she has filed a complaint under such law, in violation of N.Y. Exec. Law § 296(7).

**Count IV: Intentional Infliction of Emotional Distress**

83. Defendant Whittaker's discriminatory conduct as described above was committed with an intent to cause, or with a reckless disregard for the substantial likelihood of causing, Plaintiff Amanda David fear, humiliation, mental anguish, and severe emotional distress.

84. Defendant Whittaker's conduct as set forth above was extreme and outrageous and would have caused any reasonable person to suffer severe emotional distress.

85. As a direct and proximate result of Defendant Whittaker's harassing conduct, Plaintiff Amanda David has suffered and will continue to suffer severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grants judgment in their favor, and against Defendant Whittaker, as follows:

(a) Declaring that Defendant's actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601 et seq., the Civil Rights Act of 1866, 42 U.S.C. 1981 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.;

(b) Declaring Defendant liable to Ms. David for intentional infliction of emotional distress;

(c) Permanently enjoining Defendant from engaging in the conduct described herein and directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

(d) Awarding Plaintiffs compensatory and punitive damages in an amount that would fully compensate them for the injuries caused by Defendant and effectively deter similar conduct in the future;

(e) Awarding Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

(f) Awarding Plaintiffs other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Dated: July 18, 2024

**s/ M. Casey Weissman-Vermeulen**
M. Casey Weissman-Vermeulen (Bar #702110)
Conor J. Kirchner (Bar #518898)
CNY Fair Housing, Inc.
731 James Street, Suite 200
Syracuse, New York 13203
Phone: (315) 471-0420
Fax: (315) 471-0549
Email: cweissman-vermeulen@cnyfairhousing.org
Email: ckirchner@cnyfairhousing.org
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2024, a copy of the foregoing Amended Complaint was filed using the CM/ECF system for the Northern District of New York, which shall serve as notice of filing on all counsel of record.

**s/ M. Casey Weissman-Vermeulen**
M. Casey Weissman-Vermeulen
*Attorney for Plaintiffs*