UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMANDA DAVID, and ROOTWORK
HERBALS, LLC,

                     Plaintiffs,

              -v-                      3:24-CV-699

ROBERT WHITTAKER, JR.,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

CNY FAIR HOUSING, INC.      CONOR J. KIRCHNER, ESQ.
Attorneys for Plaintiffs       MATTHEW CASEY WEISSMAN-
731 James Street, Suite 200      VERMEULEN, ESQ.
Syracuse, NY 13203

WILLIAMSON, CLUNE & STEVENS   SYED O. SHAH, ESQ.
Attorneys for Defendant
P.O. Box 126
317 North Tioga Street
Ithaca, Ny 14851-0126

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

In July 2021, plaintiff Amanda David ("Ms. David" or "plaintiff") purchased a home in the Town of Caroline, New York. Dkt. No. 1. She lived there with her three children and operated her business, Rootwork Herbals, LLC ("Rootwork"). *Id.* Shortly after she and her family moved in, Ms. David's next-door neighbor Robert Whittaker, Jr. ("Whittaker" or "defendant"), began harassing her, her children, and her business's customers. *Id.* Defendant's conduct continued for nearly three years and culminating in criminal charges. *Id.*

On May 23, 2024, after nearly three years of Whittaker's harassment, Ms. David commenced this federal civil rights action. Dkt. No. 1. Defendant moved pursuant to Federal Rule of Civil Procedure ("Rule(s)") 12(b)(6) to dismiss plaintiffs' complaint for failure to state a claim. Dkt. No. 8. Thereafter, plaintiff amended her complaint and defendant's motion was denied as moot. Dkt. Nos. 11–12.

Ms. David amended her complaint, joining plaintiff Rootwork to the action. Dkt. No. 11. Ms. David and Rootwork's (collectively, "plaintiffs") amended complaint asserts claims for discrimination and/or retaliation under the Fair Housing Act of 1968 (the "Fair Housing Act"), 42 U.S.C. §§ 1981, 1982, and related portions of New York State law. *Id.*

On July 24, 2024, Whittaker moved pursuant to Rules 12(b)(1) and (6) to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 13.  The motion has been fully briefed, Dkt. Nos. 14–15, and will be considered on the basis of the submissions without oral argument.

## II.  BACKGROUND

Ms. David is a forty-eight-year-old African American woman.  Am. Compl. ¶ 5.  She identifies as queer.[1]  *Id.*  Ms. David is a gardener and community herbalist.  *Id.* ¶ 9.  She is also the creator, manager, and sole owner of Rootwork.  *Id.*  Through Rootwork, plaintiff provides "herbal medicine and access" to Black, Indigenous, and other people of color ("BIPOC") as well as queer, and transgender individuals in the community.  *Id.*  Plaintiffs host community gatherings, courses,  and certificate programs in-person on her property.  *Id.*

In 2020, Ms. David and her three children began renting a home in the Town of Caroline, New York (the "Town").  *Id.* ¶ 8.  Ms. David purchased the family home in 2021.  Am. Compl. ¶ 18.  Living directly adjacent to plaintiffs' property is Whittaker.  *Id.* ¶ 15.

---

[1]  The term "queer" is "[a]n umbrella term used to describe gender/sexual/romantic orientations or identities that fall outside of societal norms."  *Glossary*, LGBTQIA RESOURCE CENTER, https://lgbtqia.ucdavis.edu/educated/glossary#q (last visited Oct. 15, 2024).  Here, plaintiffs have chosen the term "queer" to denote Ms. David's sexuality.

Shortly after purchasing her home, plaintiffs became the target of Whittaker's racial and sexual epithets. *Id.* ¶ 19. According to the amended complaint, defendant made these offensive racial and sexual statements to Ms. David and her children whenever he encountered them outside. *Id.* For instance, defendant expressed skepticism that plaintiff could afford her home and stated that the father of her children "must be rich." *Id.*

Later that year, Ms. David had a fence installed around her property for privacy. Am. Compl. ¶ 20. But the fence did not dissuade Whittaker. *Id.* ¶ 23. Instead, he began using a step ladder to climb above the fence-line to continue to shout racist and sexist insults to Ms. David and her children. *Id.*

From here, Whittaker's insults only escalated. He began to harass David's children, even threatening to beat Ms. David's eldest son with a stick or a bat. Am. Compl. ¶ 27. Ms. David reached out to the Tompkins County Sheriff's Office to report the incident. *Id.* ¶ 29. Whittaker was later charged with criminal harassment in the second degree. *Id.* ¶ 30.

In November 2022, Whittaker took to firing his gun in his yard after a group of teenage customers arrived at plaintiffs' property for a Rootwork workshop. Am. Compl. ¶ 31. Defendant continued to hurl racist and sexual epithets at plaintiff. *Id.* ¶ 38. Thereafter, defendant began tampering with various sections of Ms. David's fence. *Id.* ¶¶ 32, 36. Defendant was later

charged for a second time with criminal harassment in the second degree. *Id.* ¶ 41.

Whittaker's conduct escalated. He began placing various signs in the window of his garage that directly faced the Davids' home. Am. Compl. ¶¶ 42–43, 63–64. The signs were racially derogatory. *Id.* Defendant continued to shout racial and sexual epithets at Ms. David, her children, and Rootwork program participants. *Id.* ¶ 46.

In October 2023, Whittaker defaced a portion of Ms. David's fence with spray paint. Am. Compl. ¶ 50. In response, Ms. David installed security cameras to try to monitor any activity along her property line. *Id.* ¶ 51. The Town court subsequently issued a temporary order of protection against defendant that ordered him to "stay away from and refrain from harassing, communicating with, or otherwise contacting the David family." *Id.* ¶ 52.

But Whittaker did not adhere to the terms of the order of protection: in December, defendant defaced the David's car with spray paint while it was parked in the driveway. Am. Compl. ¶ 53. Defendant was later charged with criminal harassment in the second degree. *Id.* ¶ 54. After pleading guilty to the charges, the charge was conditionally discharged by the Town court and defendant was ordered to stay away from the Davids for two years. *Id.*

The following month, Whittaker again vandalized the David's car. Am. Compl. ¶ 55. After another series of disputes regarding the David's and

defendants' respective property lines, defendant used his pellet gun to shoot out a security light on Ms. David's chicken coop. *Id.* ¶¶ 57–60. Defendant was later charged with criminal mischief in the fourth degree and criminal contempt in the second degree. *Id.* ¶ 61. The Town court issued a new temporary order of protection and required defendant to surrender any pellet guns that he owned. *Id.* ¶ 62.

Whittaker pled guilty to criminal contempt in the second degree for his act of shooting the Ms. David's security camera out and violating the temporary order of protection. Am. Compl. ¶ 65. An order of protection was issued once again. *Id.* However, defendant continued to harass Ms. David and her children. Over the summer of 2024, defendant screamed racial epithets at Ms. David and her children at a volume that could be heard from *inside* the house. *Id.* ¶¶ 68–70.

Whittaker's continued harassment forced Rootwork to cancel some of its in-person courses and workshops. Am. Compl. ¶ 74. Of the programs that Rootwork has not cancelled, it has experienced a decline in enrollments due to participants' fears of harassment when they visit the property. *Id.* ¶ 75.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up).  Rule 12(b)(1) motions may be either *facial* or *fact-based*.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the complaint . . . and exhibits attached to it[.]"  *Id.*  To resolve a facial motion, the district court must "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (cleaned up).  In doing so, the district court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence.  *Carter*, 822 F.3d at 57.  If defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert defendant's evidence.  *Id.*  To resolve a fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue.  *Id.*

**B.  Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the

level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. <u>DISCUSSION</u>

Plaintiffs' amended complaint asserts claims for discrimination and retaliation under the Fair Housing Act (Count I), 42 U.S.C. §§ 1981 and 1982 (Count II), and related portions of New York state law (Counts III & IV). Dkt. No. 11. Whittaker has moved to dismiss plaintiffs' amended complaint. Dkt. No. 13. Defendant argues that plaintiffs' amended complaint must be dismissed for lack of standing and for failure to state any plausible claims for relief. *Id.*

Standing implicates the Court's subject matter jurisdiction. *Grinnell v. United States Env't Protec. Agency*, –F. Supp. 3d–, 2024 WL 2945718, at *5 (N.D.N.Y. June 6, 2024) (citing *United States v. Texas*, 599 U.S. 670, 675 (2023)). Accordingly, the Court will address defendant's arguments regarding subject matter jurisdiction first before turning to the merits of plaintiffs' claims.

## A.  **Standing**

"Article III limits the judiciary's power to 'cases or controversies.'" *Grinnell*, 2024 WL 2945718, at *5 (citing U.S. CONST. art. III § 2)). "A case or controversy exists where there are 'adverse parties with personal interests in the matter.'" *Id.* (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. REV. 881, 882 (1983)).

As relevant here, where there are multiple named plaintiffs in an action, at least one plaintiff must have standing to seek each form of relief requested to form a valid case or controversy. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Rumsfeld v. Forum of Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)) ("It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-

or-controversy requirement.'"); *David v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

In other words, at least one named plaintiff must demonstrate that they have suffered "an actual or imminent, concrete and particularized injury-in-fact that is fairly traceable to the challenged action of the defendant and is likely to be redressed by a favorable judicial decision." *David*, 554 U.S. at 734 (quoting *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). With regard to injunctive relief, the named plaintiff must have plausibly alleged the existence of a "real or immediate threat." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

As an initial matter, Whittaker argues that neither plaintiff has standing to seek injunctive relief because the protective order rendered plaintiffs' injuries moot. Def.'s Mem. at 16–18.[2] Plaintiffs respond that their injuries have not been rendered moot because defendant's conduct never actually ceased and is still ongoing. Pls.' Opp'n at 22–23.

A review of the complaint reveals that plaintiffs are correct. Plaintiffs allege that even after the various orders of protection were issued by the Town—including the most recent one—Whittaker has continued to harass

---

[2] Pagination corresponds to CM/ECF.

them.  Am. Compl. ¶¶ 52–70.  Accordingly, defendant's mootness argument will be rejected.

Next, Whittaker argues that Rootwork must be dismissed as a named plaintiff because it lacks third-party standing.  Def.'s Mem. at 16–18.  Plaintiffs respond that Rootwork need not establish standing to satisfy the case and controversy requirements and that in any event, it can satisfy the standing requirements as an organization, not as a third-party.  Pls.' Opp'n at 23.

Upon review, plaintiffs are correct.  First, as plaintiffs correctly point out, the Court need only find that Ms. David has satisfied the standing requirements to satisfy the "case or controversy" requirement of Article III.  The factual allegations contained in the amended complaint are more than sufficient to confer standing on Ms. David: plaintiffs have plausibly alleged that Ms. David has suffered past economic and emotional injuries as well as imminent harm as a result of defendant's *ongoing* harassment.  Am. Compl. ¶¶ 72–77.  Specifically, plaintiffs allege that Ms. David has been deprived of the "full use and enjoyment" of her home and has experienced "fear, anxiety, and trepidation" as a result of Whittaker's harassment.  *Id.* ¶ 72.  These

allegations are sufficient to establish standing to seek injunctive relief.[3]
Accordingly, the Court is satisfied that it has jurisdiction and will proceed to
the merits of Whittaker's motion to dismiss.

**B.  Merits**

On the merits, plaintiffs have asserted claims for discrimination under the
Fair Housing Act, § 1981, § 1982, and related provisions of New York State
law.  Whittaker argues that plaintiffs have failed to state any claims under
federal law and therefore, the Court lacks supplemental jurisdiction to hear
plaintiffs' state-law claims.  Def.'s Mem. at 10–14.

**1.  Fair Housing Act**

Plaintiffs' amended complaint contains three Fair Housing Act claims
against Whittaker for discrimination, retaliation, and a hostile housing
environment.  Am. Compl. ¶¶ 78–81.  As an initial matter, Whittaker argues
that Rootwork's status as a for-profit business places it beyond the zone of
interests of the Fair Housing Act.  Def.'s Mem. at 14.

---

[3] Based upon the allegations in the amended complaint, it is also clear that Rootwork also
enjoys standing to sue on its own behalf as an organization.  Where an organization wishes to bring
suit in federal court, it may establish standing in one of two ways: first, "[i]t may sue on behalf of its
members, in which case it must show, *inter alia,* that some particular member of the organization
would have had standing to bring the suit individually." *N.Y. Civ. Liberties Union v. N.Y. City
Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  Second, the organization may establish standing to
sue on its own behalf by independently satisfying the Article III requirements.  *Id.*  Plaintiffs have
alleged that Rootwork has experienced a decline in registration for its in-person workshops due to
Whittaker's continued harassment.  Am. Compl. ¶ 75.  Rootwork has also been forced to cancel many
of these in-person offerings.  *Id.*

### i. __Zone of Interest__

The "zone of interests" refers to the plaintiffs whose interests were meant to be protected by the law. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). Whether a plaintiff comes within the zone of interests of a particular federal law is not a question of standing to sue, but whether that plaintiff has a cause of action under that law. *Id.* at 127. This analysis requires the district court to determine, "using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* (cleaned up).

The Fair Housing Act is "a landmark civil rights statute passed by Congress as a vital tool for preventing, rooting out, and deterring housing discrimination in its various forms." *Gilead Comm. Servs. v. Town of Cromwell*, 112 F.4th 93, 95 (2d Cir. 2024). Consequently, the Act's provisions "are to be construed broadly" to achieve its remedial purpose. *Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 545 (D. Vt. 2019) (citations omitted).

The Act defines an "aggrieved person" as "'any person who' either 'claims to have been injured by a discriminatory housing practice' or believes that such an injury 'is about to occur.'" *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017) (quoting 42 U.S.C. § 3602(i)).

But who or what constitutes a "person" within the meaning of the Fair Housing Act? The Act broadly defines a person as "one or more individuals,

corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries."  42 U.S.C. § 3602(d).

Rootwork is a limited liability company.  Am. Compl. ¶ 6.  Therefore, it is considered a "person" within the meaning of the Fair Housing Act.  § 3602(d).  Further, as discussed above, plaintiffs have plausibly alleged that Rootwork was injured within the meaning of the Fair Housing Act.  Accordingly, Rootwork is within the zone of interests protected by the Act.

### ii.  Plaintiffs' Fair Housing Act Claims

Plaintiffs' amended complaint asserts Fair Housing Act claims for: (1) disparate treatment under § 3604(c);[4] (2) a hostile housing environment under § 3617; and (3) retaliation under § 3617.  Am. Compl. ¶¶ 78–81.  Whittaker argues that plaintiffs have not plausibly alleged a violation of a right that is enumerated within §§ 3603–3605 as required by § 3617.   Def.'s

---

[4]  The Second Circuit has clarified that the prohibitions under § 3604(c) are "not limited to housing transactions or to prospective tenants[,]" *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005), but the Court is unaware of any controlling authority recognizing neighbor-on-neighbor § 3604(c) disparate treatment claims.  Equally problematic, it remains an open question within the Second Circuit whether § 3604 reaches post-acquisition conduct.  *See Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 547 n.8 (D. Vt. 2019) (collecting cases); *but see Khalil v. Farash Corp.*, 277 F. App'x 81, 84 (2d Cir. 2008) (summary order) ("Assuming, without deciding, that a plaintiff may state an FHA claim of discrimination against families with children based on a hostile housing environment theory, we conclude that the [plaintiffs] failed to introduce any record evidence of severe or persistent harassment that would support such a claim.").  But defendant has not developed any of these arguments in support of dismissal of plaintiffs' § 3604(c) claims.

Mem. at 12–14.  In the alternative, defendant argues that plaintiffs have not

articulated the requisite elements of such a claim under § 3617.  *Id.*

Section 3617 of the Fair Housing Act "makes it unlawful to coerce,

intimidate, threaten, or interfere with any person in the exercise or

enjoyment of, or on account of his having exercised or enjoyed . . . any right

granted or protected by, in relevant part, 42 U.S.C. § 3604."  *Thomas v.

Genova*, 698 F. Supp. 3d 493, 528 (E.D.N.Y. 2023) (cleaned up).

The Second Circuit has previously declined to find that § 3617 provides an

independent basis for liability.  *Frazier v. Rominger*, 27 F.3d 882, 834 (2d Cir.

1994) ("Section 3617 prohibits the interference with the exercise of Fair

Housing rights only as enumerated in these referenced sections, which define

the substantive violations of the Act.").

But district courts within this Circuit have repeatedly side-stepped

*Frazier* by distinguishing it on its facts.  *See Ohana v. 180 Prospect Place

Realty Corp.*, 996 F. Supp. 238, 241 (E.D.N.Y. 1998) ("Unlike Frazier,

plaintiffs do not appear to have a claim against the defendants bottomed on a

violation of any of the substantive provisions of §§ 3603–3606.")*; see also

Birch Family Servs., Inc. v. Wlody*, 2021 WL 2312852, at \*5–6 (E.D.N.Y. June

7, 2021).

Notably, *Frazier* was decided before the U.S. Department of Housing and

Urban Development ("HUD") promulgated a set of more recent regulations

interpreting the Fair Housing Act.  In particular, 20 C.F.R. § 100.400, which interprets § 3617, went into effect in 2016, over a decade after *Frazier*.

Section 100.400(b) provides in relevant part that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this part."  20 C.F.R. § 100.400.

On this basis, district courts in this Circuit have recognized claims for retaliation and a so-called "hostile housing environment"  and permitted them to proceed under § 3617 independent of a violation of §§ 3603–3605.[5] *See, e.g.*, *Zlotnick v. Crystal Run Vill., Inc.*, 2021 WL 4993712, at *5 (S.D .N.Y. Oct. 27, 2021); *Doe v. YMCA of Ne. N.Y.*, 2020 WL 705264 (N.D.N.Y. Feb. 12, 2020) (McAvoy, J.) (collecting cases).  Indeed, so has at least one panel of the second circuit.  *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order).

---

[5]  As defendant points out, the Supreme Court recently overruled *Chevron*.  *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  Whittaker argues that under *Loper-Bright*, HUD's regulations are not entitled to any deference.  In *Loper-Bright*, the Supreme Court held federal courts have discretion to decide "whether an agency has acted within its statutory authority as the [Administrative Procedure Act] requires."  *Id*.  Here, however, defendant does not articulate how HUD has exceeded its long-delegated rulemaking authority.  Accordingly, defendant's argument is rejected at this threshold stage.

### a. **Hostile Housing Environment**

To state a hostile housing environment claim under § 3617, plaintiffs must plausibly allege that: "(1) the plaintiff was subjected to harassment that was sufficiently pervasive and severe; (2) the harassment occurred because of the plaintiff's membership in a protected class; and (3) the defendant is responsible for the allegedly harassing conduct." *Glover v. HPC-Eight, LLC*, 2022 WL 1004572, at *10 (D. Conn. Apr. 4, 2022) (cleaned up); *Khalil v. Farash Corp.*, 277 F. App'x 81, 84 (2d Cir. 2008) (summary order).

Whittaker argues that plaintiffs have failed to plausibly allege that they were constructively evicted from the property as a result of defendant's conduct.  In support of this argument, defendant points to *Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 548 (D. Vt. 2019) (citing *Bloch v. Frischholz*, 587 F.3d 771, 777 (7th Cir. 2009).  There, the trial court concluded that constructive eviction is a required element of a hostile housing environment claim under § 3617.

Upon review, this argument must be rejected.  The *Mohamed* court's imposition of constructive eviction as a required element of a hostile housing environment claim appears to be incorrect.  To be sure, the *Mohamed* court rests its conclusion on the Seventh Circuit's decision in *Bloch*.  *Mohamed*, 390 F. Supp. 3d at 548 (citing *Bloch*, 587 F.3d at 777).  But in doing so, cites to the portion of the panel's decision regarding § 3604 liability—not § 3617.

*Bloch*, 587 F.3d at 777.  The panel separately held that § 3617 claims for a hostile housing environment *do not* require proof of constructive eviction.  *Id.* at 782.  The court concluded that because § 3617 applies to *post-acquisition* conduct, requiring plaintiffs to establish constructive eviction was contrary to the statutory purpose of the Fair Housing Act.  *Id.*

Measured against this standard, plaintiffs have plausibly alleged a claim for a hostile housing environment against Whittaker.  Plaintiffs have plausibly alleged facts that permit the conclusion that defendant's conduct was severe and pervasive.  In particular, plaintiffs allege that Ms. David and her children faced a near constant onslaught of epithets taking aim at Ms. David's race and sexuality.  *Supra.*  Plaintiffs further allege that Rootwork's employees—including Ms. David—were subjected to substantially the same manner and degree of misconduct.  Therefore, plaintiffs have plausibly alleged that defendant subjected them to a hostile housing environment. Accordingly, defendant's motion to dismiss plaintiff's § 3617 claim for a hostile housing environment will be denied.

### b. **Retaliation**

To state a claim for retaliation under § 3617, plaintiffs must first plausibly allege that they engaged in a protected activity.  *See Favourite v. 55 Halley Street, Inc.*, 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019).  As relevant here, a protected activity "refers to action taken to protest or oppose statutorily

prohibited discrimination." *Id.* (quotation omitted).  Plaintiffs must then plausibly allege that the defendant was not only aware of the protected activity, but took adverse action against the plaintiff under circumstances giving rise to a causal connection between the plaintiff's protected activity and defendant's action.  *Id.*

Measured against this standard, plaintiffs have plausibly alleged that plaintiffs engaged in protected activity when Ms. David complained to law enforcement about Whittaker's harassment.[6]  Am. Compl. ¶¶ 29, 33, 37, 39, 50, 56, 58, 61.  Plaintiffs allege that defendant was aware of Ms. David's complaints.  *Id.* ¶¶ 30, 37, 40–41, 52, 54, 61–62, 65–66.  Plaintiffs further allege that defendant's harassment only escalated after criminal proceedings were initiated.  *Supra.*  Thus, plaintiffs have carried their burden at the pleading stage to plausibly allege that there was a causal connection between their protected activity and defendant's subsequent adverse actions towards them.  Accordingly, defendant's motion to dismiss plaintiffs' § 3617 retaliation claim will be denied.

## 2. **§§ 1981 and 1982**

Plaintiffs have also brought claims under 42 U.S.C. §§ 1981 and 1982. Am. Compl. ¶ 81.  Whittaker argues that plaintiffs have failed to state a

---

[6] Ms. David is the sole member and owner of Rootwork.  Am. Compl. ¶ 9.  Accordingly, for the purposes of this motion to dismiss, plaintiffs have plausibly alleged that Rootwork similarly engaged in a protected activity when Ms. David reported defendant's conduct to law enforcement.

claim under §1981 because plaintiffs have failed to adequately plead that

defendant interfered with their contractual rights.  Def.'s Mem. at 10.

Defendant next argues that plaintiffs have failed to state a claim under §

1982 because they have failed to identify how he interfered with their right to

purchase, lease, sell, hold, or convey their real property.  *Id.* at 11.

"Section 1981 provides that all persons have equal right to make and

enforce contracts, and § 1982 establishes that all persons have equal right to

purchase, lease, sell, hold, and convey real and personal property."  *C.C.M.S.*

*v. Oxford Realty & Holdings LLC*, 2024 WL 1194693, at *4 (S.D.N.Y. Mar. 20,

2024) (quoting *Silva v. Farrish*, 47 F.4th 78, 89 (2d Cir. 2022)).

To state a plausible claim under either statute, "plaintiffs 'must allege

facts supporting the following elements: (1) plaintiffs are members of a racial

minority; (2) defendants' intent to discriminate on the basis of race; and (3)

discrimination concerning one of the statute's enumerated activities. '"

*Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 2022 WL 710896, at *3 (2d

Cir. Mar. 10, 2022) (summary order) (quoting *Brown v. City of Oneonta*, 221

F.3d 329, 339 (2d Cir. 2000)).  As relevant here, "[l]iability under § 1981 for

interference with a third-party contract attaches only to persons who actually

had the power or authority to prevent the plaintiffs from contracting with the

third party."  *Azzarmi v. Neubauer*, 2024 WL 4275589, at *14 (S.D.N.Y. Sept.

24, 2024) (quoting *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 358 (S.D.N.Y. 2010)).

Claims under §§ 1981 and 1982 are analyzed using the familiar *McDonnell Douglas* burden shifting mechanism. *C.C.M.S.*, 2024 WL1194693, at *4–5. At the pleading stage, however, plaintiffs need only allege facts that give "rise to a plausible inference of discrimination." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015)).

Measured against this general standard, plaintiffs have plausibly alleged claims under both §§ 1981 and 1982. Plaintiffs allege that Whittaker interfered with their contracts with third-parties: participants in their in-person workshops and potential employment contracts. Am. Compl. ¶¶ 74–77. These allegations support plaintiffs' claim that defendant interfered with plaintiffs' ability to hold their real property for its intended purpose. *See id.* Plaintiffs further allege that defendant resides directly adjacent to the property in question. *Id.* ¶ 7.

Thus, at the pleading stage, plaintiffs have plausibly alleged that defendant possessed the requisite power or authority to interfere with not only the use of their property, but with prospective third-party contracts as

required under both statutes.[7]  Accordingly, Whittaker's motion to dismiss plaintiffs' §§ 1981 and 1982 claims will be denied.

### 4.  <u>State-Law Claims</u>

Plaintiffs have also brought state-law claims.  In support of his motion to dismiss, Whittaker argues that the Court lacks jurisdiction to hear plaintiffs' state law claims.  According to defendant, the Court lacks original jurisdiction to hear plaintiffs' federal claims because plaintiffs have failed to state a claim under any of the federal causes of action cited in their amended complaint.  Def.'s Mem. at 19–20.  Defendant further argues that even if the Court has original jurisdiction, the Court should nonetheless decline to exercise its discretionary supplemental jurisdiction over plaintiffs' state-law claims because plaintiffs' state law tort claims would "substantially predominate" the case.  *Id.* at 20.

As discussed, *supra*, plaintiffs' FHA, §§ 1981 and 1982 claims have survived Whittaker's motion to dismiss.  Further, none of the state law claims asserted in the amended complaint present novel issues of state law that might otherwise direct the Court to decline to exercise its supplemental jurisdiction.  Accordingly, the Court may exercise supplemental jurisdiction over plaintiffs' remaining state law claims.  28 U.S.C. § 1367.

---

[7]  Neither party disputes that Ms. David is a member of a racial minority, and that as the owner of Rootwork, Rootwork's leadership team was also a member of a racial minority.  Am. Compl. ¶¶ 5, 9.

## V.  **CONCLUSION**

In sum, plaintiffs have alleged sufficient facts to give rise to a case or controversy within the meaning of Article III.  Plaintiffs have also alleged plausible claims for relief under the Fair Housing Act, § 1981, § 1982.  The Court may thus exercise supplemental jurisdiction over plaintiffs' remaining state-law claims.  28 U.S.C. § 1367.

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss (Dkt. No. 13) is DENIED; and

2.  Defendant shall file and serve an answer to plaintiffs' amended complaint on or before October 31, 2024.

The Clerk of the Court is directed to terminate the pending motion and set a deadline accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October 17, 2024
            Utica, New York.